BETTY JANE PLOCAR *et al.*, Plaintiffs-Appellants, *v.* DUNKIN' DONUTS OF AMERICA, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-2788

Opinion filed December 29, 1981.

Phillip L. Kotula, of Roselle, for appellants.

Jenner & Block, of Chicago (Howard R. Barron and Ruben Castillo, of counsel), for appellee Elizabeth Bennett.

Rothbart, Stein & Moran, of Chicago (Thomas E. Moran, of counsel), for appellee Dunkin' Donuts of America, Inc.

JUSTICE PERLIN delivered the opinion of the court:
This is an appeal from an order of the circuit court of Cook County which dismissed with prejudice, for failure to state a cause of action, the complaint of the plaintiffs, Betty Jane Plocar (Betty Jane) and Joseph Plocar, Sr. (Joseph, Sr.), upon motions of the defendants, Dunkin' Donuts of America, Inc. (Dunkin' Donuts) and Elizabeth Bennett, a district manager for Dunkin' Donuts. The trial court's dismissal of the action for intentional infliction of emotional distress, loss of consortium and violation of a franchise contract was based solely on the pleadings.

The following issues are presented for review: (1) whether Betty Jane sufficiently alleged a cause of action against Elizabeth Bennett for intentional infliction of emotional distress; (2) whether Betty Jane sufficiently alleged a cause of action against Dunkin' Donuts on the basis of the alleged actions of Elizabeth Bennett; (3) whether Joseph, Sr., sufficiently alleged a cause of action against Elizabeth Bennett and Dunkin' Donuts for loss of consortium or intentional infliction of emotional distress; (4)

whether plaintiffs properly alleged a cause of action against Dunkin' Donuts for violation of a franchise contract; and (5) whether the trial court abused its discretion by dismissing with prejudice plaintiff's second amended complaint.

For the reasons hereinafter set forth, we affirm the order of the trial court.

Plaintiffs filed three complaints in this action, all of which alleged that Betty Jane was a franchisee of Dunkin' Donuts, and that Elizabeth Bennett was a district manager for that company.

Betty Jane's first complaint was filed on December 28, 1979, in the circuit court of Will County, Illinois. Subsequently the parties agreed by stipulation to transfer the cause to the circuit court of Cook County. Dunkin' Donuts and Elizabeth Bennett then filed motions to dismiss the complaint based on Betty Jane's failure to state a cause of action for injury to her business and intentional infliction of emotional distress and her failure to set forth, as required by section 36 of the Civil Practice Act, an alleged written agreement between her and Dunkin' Donuts.

On May 28, 1980, after a full hearing, the trial court entered an order granting defendants' motions to dismiss the complaint. The court also granted plaintiff 28 days in which to file an amended complaint.

On July 11, 1980, Betty Jane moved the court for leave to file an amended complaint and to add Joseph Plocar, Sr., as a party plaintiff. Defendants renewed their motions to dismiss the complaint for failure to state a cause of action. After reviewing plaintiff's amended complaint and hearing argument from all parties, the trial court ordered that plaintiff's amended complaint be stricken. The court granted plaintiff seven days to file a second amended complaint and granted plaintiff's motion to add the additional party plaintiff.

On July 16, 1980, plaintiffs filed their second amended complaint. That complaint is the subject of this appeal.

Plaintiffs' second amended complaint was comprised of four counts. Count I alleged that defendant Elizabeth Bennett had "unlawfully, wilfully and contemptuously insulted, disturbed, disquieted and threatened the plaintiff (Betty Jane) by the use of indecent language and proposals when she knew or should have known that such conduct was likely to cause the plaintiff the injuries herein described." It was averred that Bennett, a district manager and agent of Dunkin' Donuts, became romantically involved with Betty Jane's son, who was also her store manager. Due to Mrs. Plocar's disapproval of the relationship between Bennett and her son, Bennett "threatened" Mrs. Plocar that if she did not stay out of her store, Bennett would cause her to lose the store by making false reports to the franchisor.

It was also asserted that Bennett, as district manager for Dunkin'

Donuts, possessed "great power over the operation and success of the franchises within her district and the plaintiff was at all times in great emotional fear of losing her store if she did not comply with the defendant's requests." Bennett allegedly offered to Mrs. Plocar's son another franchise operation for a price below the reasonable market value. Bennett also allegedly caused Mrs. Plocar's son to absent himself from the store for hours, disrupting Mrs. Plocar's business.

Plaintiffs also claimed that Bennett's wrongful acts, words and proposals caused Mrs. Plocar to become "ill, excited and nervous; her moral sensibilities and ideals of decency and propriety were shocked and she suffered a nervous breakdown, and great pain, anguish and humiliation." Moreover, Bennett's acts allegedly caused Mrs. Plocar to be "nervous, irritable, and unable to perform her necessary duties" and that Mrs. Plocar was institutionalized as a result. Mrs. Plocar's health was allegedly "permanently injured" and she was "forced to expend large sums for doctor bills and medicine."

It was further charged that Bennett "exhibited letters and made statements to the plaintiff referring to the plaintiff's son which included explicit and sexual connotations, all of which were calculated to severely traumatize and emotionally distress the plaintiff." Plaintiffs sought judgment against Elizabeth Bennett for $200,000, punitive damages in the amount of $200,000 and costs of the suit.

Count II of plaintiffs' second amended complaint alleged that Elizabeth Bennett had acted with the implied and apparent authority of Dunkin' Donuts and that Dunkin' Donuts had thus negligently caused Mrs. Plocar to suffer "mental and emotional distress and anxiety" despite its being aware of the problem between Bennett and Mrs. Plocar. A judgment was sought against Dunkin' Donuts in the amount of $300,000 plus costs of the suit.

Count III of plaintiff's second amended complaint alleged an action on behalf of Joseph Plocar, Sr., the husband of Betty Jane Plocar, for loss of his wife's consortium. It was alleged further that "by being forced to witness the suffering endured by his wife, whereby his own nerves and health have been seriously and permanently shocked, weakened and impaired * * *," Mr. Plocar was deprived of the care and companionship of his wife. This count sought judgment against defendants in the amount of $75,000.

Count IV of the second amended complaint alleged that Dunkin' Donuts, at the time it sold a franchise to Mrs. Plocar, both orally and in writing agreed to repair faulty equipment existing on the franchise premises. It was asserted further that Dunkin' Donuts "refused and still refuses to" repair such equipment, and that as a "direct and proximate cause, plaintiff has been damaged in the amount of" $3,057. Plaintiffs sought

judgment against Dunkin' Donuts in the same amount, plus costs of the suit.

Both defendants, Dunkin' Donuts and Elizabeth Bennett, filed motions to dismiss plaintiffs' second amended complaint on the grounds that: (1) counts I and II failed to properly set forth facts that would support a cause of action for intentional infliction of mental and emotional distress because no bodily injury or physical impact was alleged and because the alleged facts did not show any extreme or outrageous conduct; (2) count III failed to properly set forth facts which would support the allegation that defendants were liable for the injuries allegedly sustained by Mrs. Plocar and thus Mr. Plocar would have no cause of action against defendants for loss of his wife's consortium; (3) count IV failed to state a cause of action against Dunkin' Donuts because plaintiffs did not set out in their complaint, as required by section 36 of the Civil Practice Act, the agreement allegedly breached by Dunkin' Donuts.

On September 25, 1980, a hearing was held on the respective motions of Elizabeth Bennett and Dunkin' Donuts to dismiss plaintiffs' second amended complaint. Following the hearing, the trial court entered an order granting defendants' motions to dismiss and dismissed "with prejudice as to all defendants" plaintiffs' second amended complaint.

On October 24, 1980, plaintiffs filed a timely notice of appeal from the order of the trial court.

## I

The first issue presented is whether Betty Jane, in count I of her second amended complaint, sufficiently alleged a cause of action against Elizabeth Bennett for intentional infliction of emotional distress. Defendants argue that this count of Mrs. Plocar's complaint is unsupported by allegations of specific facts that would give rise to an action for intentional infliction of emotional distress, and thus the trial court's order granting defendants' motion to dismiss count I was proper.

■■ To state a cause of action for intentional infliction of emotional distress a plaintiff must allege facts to establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) in cases such as the instant one where plaintiff alleges that defendant's conduct was "reckless," that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result. See *Public Finance v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.

■■ With respect to the first element, the nature of defendant's conduct, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *." (Restatement (Second) of Torts §46, com-

ment d (1965).) Extreme and outrageous conduct may arise from an abuse of position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests.

■■ With respect to the second element, the severity of the distress suffered by the plaintiff, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts §46, comment j (1965); see also Prosser, Law of Torts §12, at 54 (4th ed. 1971).

■■ Finally, as to the recklessness of defendant's conduct, liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it. Restatement (Second) of Torts §46, comment i (1965); Prosser, Torts §12, at 60 (4th ed. 1971).

All of the above elements were delineated in *Public Finance* wherein the Illinois Supreme Court ruled that a cause of action for either intentional or reckless infliction of emotional distress was not adequately set forth. The court stated:

> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." (66 Ill. 2d 85, 89-90.)

The court cited *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, the case in which intentional infliction of emotional distress was recognized as a separate tort in Illinois. In *Knierim* the court cautioned:

> "It has not been suggested that every emotional upset should constitute the basis of an action [(for intentional infliction of emotional distress)]. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts * * *.
>
>      * * *
>
> There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions." 22 Ill. 2d 73, 85-86.

■■ In the instant case we do not consider that the alleged conduct of defendant Bennett amounted to more than mere insults, indignities, threats or annoyances. Specifically it was alleged that Bennett "insulted, disturbed, disquieted and threatened the plaintiff (Betty Jane Plocar) by the use of indecent language and proposals"; that she told plaintiff to "stay out of the store" and threatened to make false reports regarding plaintiff to Dunkin' Donuts. Bennett also allegedly exhibited to plaintiff letters and statements with explicit sexual connotations in reference to plaintiff's son.

Although Bennett's actions, as described by her counsel, may have been "hasty and unfortunate," the complaint alleges no facts that would

raise these actions to the level of extreme and outrageous conduct.[1] Even if it is true that Bennett threatened to file false reports about Mrs. Plocar to Dunkin' Donuts, Mrs. Plocar never alleged that these threats were carried out or that she was reasonably in fear of losing her store. Although Bennett's relationship to Mrs. Plocar gave her actual or apparent authority to adversely affect Mrs. Plocar's franchise interest, such relationship, standing alone, does not relieve Plocar of the burden of alleging the extreme and outrageous nature of Bennett's conduct. "Conduct which otherwise amounts to no more than insults or indignities will not be deemed to be extreme and outrageous simply by virtue of some special relationship which exists between the parties." *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 856, 392 N.E.2d 591, 596.

■■ We conclude that the trial court properly dismissed for failure to state a cause of action count I of plaintiffs' second amended complaint.[2]

## II

The second issue presented is whether Betty Jane Plocar sufficiently alleged a cause of action against Dunkin' Donuts on the basis of the alleged actions of Elizabeth Bennett. Plaintiffs argue that Dunkin' Donuts is liable for its "willfull or intentional or reckless failure to restrain its agent defendant Bennett."

Plocar argues that Illinois law imposes liability on a corporation "for negligently entrusting improper people with the ability to adversely effect [*sic*] others." Plocar cites as an "analogous" case *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235.

In *Rosenberg* the court stated:

"[D]efendant Packerland wilfully, wantonly, or intentionally entrusted its truck to a driver it knew or should have known was emotionally and mentally unstable and unsuitable, had a disposition for intentional conduct which would cause or strike fear into other persons using roadways reserved for the general public, and was probably insane." (55 Ill. App. 3d 959, 964.)

We find no analogy between the actions of an employer in allowing an emotionally and mentally unstable person to drive a truck with which he could injure or kill others, and the actions of Dunkin' Donuts in allowing

---

[1] Plaintiff also alleges that Bennett's conduct was reckless in that Bennett knew such conduct would result in severe emotional distress to plaintiff. This allegation is unsupported by specific facts and appears to be merely a conclusion. See *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 62-63, 393 N.E.2d 1171, 1175.

[2] In reviewing count I and defendant's motion to dismiss, we note that although such motion admits all facts well pleaded together with all reasonable inferences which can be drawn from those facts, it does not admit conclusions of law or conclusions of fact unsupported by specific facts upon which such conclusions rests. *Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 169 N.E.2d 747.

Bennett to continue in her job as a district manager for the company after she had allegedly insulted and threatened Mrs. Plocar. Moreover, there is no allegation in Mrs. Plocar's complaint that Dunkin' Donuts knew or should have known that Bennett was "emotionally and mentally unstable."

██ Plaintiffs' second theory of Dunkin' Donuts liability is predicated on the doctrine of respondeat superior. The rule in Illinois with respect to respondeat superior is:

> " '* * * [T]he * * * employer is liable for the negligent, wilful, malicious, or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer; but when the act is committed solely for the benefit of the employee, the employer is not liable to the injured third party.' " *Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 266-67, 366 N.E.2d 925, 929.

The theory of respondeat superior clearly does not apply to the instant case since nowhere in count II of plaintiffs' second amended complaint is it alleged that the actions of Bennett were taken in furtherance of Dunkin' Donuts' business nor that such actions were within the scope of Bennett's employment. If the allegations of the complaint are taken as true, the most that can be said is that Bennett's acts were committed solely for her own benefit, *i.e.*, to put an end to Mrs. Plocar's interference in Bennett's relationship with Plocar's son. Under the rule enunciated in *Hoover*, Dunkin' Donuts would not be liable for Bennett's alleged acts. We hold therefore that the trial court properly dismissed, for failure to state a cause of action, count II of plaintiffs' second amended complaint.

### III

The third issue presented is whether Joseph Plocar, Sr., sufficiently alleged a cause of action against Elizabeth Bennett and Dunkin' Donuts for loss of consortium or intentional infliction of emotional distress.

Defendants argue that if it is determined that Mrs. Plocar failed to state a cause of action against defendants for intentional infliction of emotional distress, and cannot recover damages from defendants for her injuries, then her husband cannot recover from defendants for his loss of consortium or intentional infliction of emotional distress.

██ It is generally held that a right of action against a third party for loss of consortium as a result of injuries to a spouse is dependent upon the establishment of the third party's liability for the spouse's injuries. See *Tjaden v. Moses* (1968), 94 Ill. App. 2d 361, 237 N.E.2d 562; *Clark v. Carson Pirie Scott & Co.* (1950), 340 Ill. App. 260, 91 N.E.2d 452.

Since we find that Betty Jane Plocar has failed to establish that defendants are liable to her for intentional infliction of emotional distress, then it follows that Joseph Plocar, Sr., has no right of action against

defendants for loss of consortium. Moreover, since Mrs. Plocar has failed to state a cause of action for intentional infliction of emotional distress, Mr. Plocar cannot base his own action for intentional infliction of emotional distress on injuries which his wife has failed to establish. We conclude that the trial court properly dismissed count III of plaintiff's second amended complaint.

## IV

The fourth issue presented is whether plaintiffs properly alleged a cause of action against Dunkin' Donuts for violation of a franchise contract. In count IV Mrs. Plocar alleged that Dunkin' Donuts did agree "in writing" to repair existing damage on the store premises. The damages were set forth by Mrs. Plocar in Exhibit B attached to her complaint. She did not, however, attach to her complaint a copy of the written "repair" agreement.

■■ Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36) requires that if a claim is founded upon a written instrument, a copy thereof must be attached to the pleadings as an exhibit or recited therein. Since plaintiffs did not comply with this requirement, the trial court properly dismissed count IV of their second amended complaint.[3]

## V

The final issue presented is whether the trial court abused its discretion by dismissing with prejudice plaintiffs' second amended complaint. ■■ Section 45(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45(4)) provides in part:

> "(4) After rulings on motions, the court may enter appropriate orders either to permit or require pleading over or amending or to terminate the litigation in whole or in part."

A trial court has discretion to allow the amendment of pleadings or to finally terminate litigation, and the refusal of the trial court to allow amendment is reversible error only if there is an abuse of discretion. (See *City of Des Plaines v. Pollution Control Board* (1978), 60 Ill. App. 3d 995, 377 N.E.2d 114.) The test to be applied in determining whether discretion was properly exercised in denying an amendment to the pleadings is whether it furthers the ends of justice. In this regard the court may determine the ultimate efficacy of a claim in passing on a motion to amend and whether plaintiff had previous opportunities to assert his claim. *Ennis v. Illinois State Bank* (1969), 111 Ill. App. 2d 71, 76, 248 N.E.2d 534.

---

[3] Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36) provides:
"If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, *unless the pleader attaches to his pleading an affidavit stating facts showing that the instrument is not accessible to him.* ° ° °." (Emphasis added.) Plaintiffs did not attach such an affidavit.

■■ In the instant case the trial court afforded the plaintiffs three opportunities to state a cause of action: once in their complaint, a second time in an amended complaint, and a third time in a second amended complaint. Section 45 and the cases which have construed it clearly hold that a party does not have a right to unlimited amendments. The trial court may bring the litigation to an end when it believes that further amendments to pleadings will not further the interests of justice. *Beresky v. Teschner* (1978), 64 Ill. App. 3d 848, 381 N.E.2d 979.

Plaintiffs had a fair opportunity to attempt to state a cause of action against the defendants, but in the course of twice amending their complaint they were apparently unable to allege specific facts to support an actionable wrong. We conclude, therefore, that the trial court did not abuse its discretion in terminating the litigation by dismissing with prejudice plaintiffs' second amended complaint.

For the reasons stated, the order of the circuit court of Cook County is affirmed.

HARTMAN, P. J., and DOWNING, J., concur.